UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TYREK DUBOSE,                                            :
                          Plaintiff,                     :
                                                         :        **OPINION AND ORDER**
v.                                                       :
                                                         :        22 CV 2124 (VB)
CO JIMENEZ, et al.,                                      :
                          Defendants.                    :
----------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Tyrek Dubose, proceeding pro se and in forma pauperis, brings this Section

1983 action against defendants Correction Officers ("C.O.s") Jimenez, Harkins, Tracy, John Doe

1, Del Bianco, Ortiz, Serringer, Albert, Prince, Lopez, Nienstedt, Figueroa, Walden, Drexler,

Nelson, Bianchi, Downer, Buckham, John Doe 2, Kitson, Lopez, Morales, Lavalle, and Piggee;

Nurse Pitt; Sergeants ("Sgts.") Campbell, Santos, and Carbone; Nurse Administrators Furco and

Osselman; Hearing Officer Mayes; Anthony Rodriguez; Donald Venettozzi; Superintendent

Burnett; Deputy Superintendent Wood; and Offender Rehabilitation Coordinator ("ORC") Losi.[1]

Plaintiff alleges defendants, who are all New York State Department of Corrections and

Community Supervision ("DOCCS") employees working at Fishkill Correctional Facility

("Fishkill"), violated his First, Eighth, and Fourteenth Amendment rights while plaintiff was

incarcerated at Fishkill.

        Now pending is defendants' motion to dismiss the complaint in part pursuant to Rule

12(b)(6), which seeks to dismiss plaintiff's claims against certain defendants for (i) First

Amendment retaliation and denial of access to courts; (ii) Eighth Amendment excessive force,

---

[1]     Plaintiff sued defendants Jimenez as "Jiminez," Tracy as "Tracey," and Piggee as
"Piguet." (See Doc. #62). The Court refers to them as their proper names, as set forth in
defendants' motion. (See id.).

1

failure to intervene, sexual abuse, deliberate indifference to medical needs, failure to protect, and deliberate indifference; (iii) Fourteenth Amendment procedural due process; and (iv) Section 1983 conspiracy.  (Doc. #62).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, documents attached thereto, and plaintiff's opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

I.  <u>Alleged Verbal Harassment and Threats Regarding Plaintiff's Prior Legal Claims</u>

Beginning on February 5, 2021, the date plaintiff arrived at Fishkill, he alleges C.O.s Jimenez, Harkins, and Tracy engaged in coordinated efforts to deter him from pursuing claims in a different civil lawsuit (the "Ulster Action") related to Ulster Correctional Facility ("Ulster"). On that day, Jimenez allegedly threatened plaintiff by stating, "this is not ulster, yea we know

---

[2]  In addition to the complaint, courts may consider a <u>pro se</u> plaintiff's other submissions, such as any opposition to a motion to dismiss, when "evaluating the legal sufficiency of a <u>pro se</u> plaintiff's claims."  <u>See</u> <u>Vlad-Berindan v. MTA N.Y.C. Transit</u>, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).  Plaintiff will be provided copies of all unpublished opinions cited in this decision.  <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Plaintiff has submitted voluminous pleadings.  The Court only recites those allegations relevant to the claims defendants are moving to dismiss.

about ulster, you'll either fall in line or we'll fuck you up."  (Doc. #1 ("Compl.") at ECF 5 ¶ A).[3]

About three days later, Tracy purportedly told plaintiff he knew Jimenez had spoken with

plaintiff and likewise threatened plaintiff to "hold everything down or ill take your freedom, if

you so much as go to the law library, your toast."  (Id. at ECF 12 ¶ 4).

       Nevertheless, on February 16, plaintiff alleges he was able to "sne[a]k" into Fishkill's

law library and notarize a notice of intention related to the Ulster Action.  (Compl. at ECF 19

¶ 6).  Tracy allegedly witnessed plaintiff leaving the library and remarked, "what the fuck did i

tell you?  now we are going to show you what the fuck is up!"  (Id.).

       About two weeks later, plaintiff claims Jimenez, Harkins, and Tracy began spreading

"rumors" about plaintiff which caused other inmates to bully him, take his food, and prohibit him

from using the phone.  (Compl. at ECF 19 ¶ 7).

       According to plaintiff, on March 4, officers escorted him to the medical unit because

Tracy had reported that plaintiff was asleep in the bathroom and unable to walk.  (Compl. at ECF

19 ¶ 8).  Thereafter, plaintiff was allegedly tested and determined to be sober.  (Id.; see Ex. A at

ECF 41).[4]  While plaintiff was returning to his cell, he alleges Tracy told him, "this was just a

warning, the next time it wil be worse."  (Compl. at ECF 19 ¶ 9).

       Thereafter, Tracy and Harkins allegedly began talking to plaintiff about a "deal" which

plaintiff interpreted as "a violent act to be committed to clear a debt."  (Compl. at ECF 20 ¶ 10).

---

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

       The complaint uses different numbering schemes for paragraphs and some pages were
not docketed in sequential order.  Accordingly, for the avoidance of confusion, the Court cites to
the complaint using both ECF page numbers and the paragraph label used by plaintiff.

[4]     Citations to "Ex." refer to the exhibits attached to plaintiff's complaint and the relevant
ECF page number.

On March 6, a search of plaintiff's cell purportedly resulted in no items being confiscated; however, in the "items confiscated or damaged" column of the cell search receipt, plaintiff alleges Tracy wrote "HomE."  (Id. ¶ 11; see Ex. B at ECF 43).[5]  Plaintiff states he interpreted this note as a threat that if he continued pursuing the Ulster Action, plaintiff "would damage his chances of" being released from prison and "making it home."  (Compl. at ECF 20 ¶ 11).

On March 27, 2021, plaintiff alleges as part of the "deal," Harkins told him to beat up another inmate, named Evans.  (Compl. at ECF 6 ¶ A3, ECF 13 ¶ 14).  Plaintiff claims Harkins promised plaintiff would not go "to the box" for beating up Evans, but if he refused to assault him, plaintiff would not "make it home."  (Id. at ECF 13 ¶ 14).  According to plaintiff, acting under duress, he beat Evans to unconsciousness—despite Harkins having told plaintiff to "finish him."  (Id. ¶¶ 15–16).  As a result, plaintiff alleges Harkins "pulled some strings" so that plaintiff would receive a lesser disciplinary infraction.  (Id. at ECF 14 ¶ 19).

According to plaintiff, from approximately February 10 to March 27, he attempted to send emails regarding this conduct to Fishkill and his girlfriend, yet unknown officers intercepted the emails, read them, and prevented them from being transmitted to plaintiff's girlfriend.

As a result of the alleged conduct of Jimenez, Harkins, and Tracy, plaintiff states he was in a "constant state of fear and withdrawl" which led him to "ceas[e] pursuit" of his First Amendment rights.  (Compl. at ECF 20 ¶ 12).  In his opposition, plaintiff alleges these defendants' "plan worked" because plaintiff was "forced to file [his] claims late" and consequently, plaintiff has "no state claims in New York State Court of Claims," although he

---

[5]     Upon review of the document, the Court concludes the handwriting is unclear, however the word may be "None."  (See Ex. B at ECF 43).

intended to bring the Ulster Action in state court rather than federal court.  (Doc. #72 ("Opp.") at ECF 2).

II.      Alleged Harassment in Keeplock

Around March 28, 2021, plaintiff allegedly was moved and confined in "keeplock," which was guarded by C.O.s Del Bianco and Ortiz.  (Compl. at ECF 15 ¶ 25).  Plaintiff alleges Del Bianco and Ortiz spread rumors that plaintiff was gay and would masturbate for male staff.

On April 26, plaintiff states he informed Fishkill staff that he was having suicidal thoughts.  (Compl. at ECF 23 ¶¶ 50, 51; Ex. F at ECF 53).  Plaintiff states this was at least partially because of false rumors spread by C.O.s Drexler, Nelson, and Bianchi, which caused inmates to "kick and ban[g]" plaintiff and call him "derogatory names."  (Compl. at ECF 23 ¶ 50).  For example, on April 22, plaintiff claims Drexler stood at plaintiff's door and yelled "let me see it," which plaintiff believes other inmates interpreted to mean that plaintiff was showing Drexler his penis.  (Id. ¶ 53).  And on April 23, Drexler allegedly yelled "dubose is gay" which caused other inmates to "initiat[e] a bullying congregation."  (Id.).  In addition, plaintiff alleges Bianchi withheld food from him because plaintiff refused to show him his penis.

At an unspecified time, plaintiff further alleges "on multiple occasions," C.O. Lopez requested that plaintiff "commit sexual favors" in exchange for being "left alone" and Lopez applied "tremendous" pressure on plaintiff.  (Compl. at ECF 9 ¶ D2).

In April, upon arriving in housing unit B-east, plaintiff alleges C.O. Serringer confronted him, saying, "all that prea[6] shit you be doing is dead, leave the ulster shit alone, we did you a

---

[6]      "PREA" commonly refers to the Prison Rape Elimination Act.  See Prison Rape Elimination Act, New York State Department of Corrections and Community Supervision, https://doccs.ny.gov/prea (last visited Aug. 2, 2023).

favor with the evans thing." (Compl. at ECF 17 ¶ 32).  That evening, plaintiff claims Serringer endangered him by spreading rumors to other inmates that plaintiff was an informant.

On April 21, 2021, plaintiff allegedly had a series of encounters with C.O.s (the "April 21 Incident").  First, Serringer purportedly caught plaintiff smoking in the bathroom and told him, "you can either be my bitch or get found with a weapon." (Compl. at ECF 17 ¶ 34).  Plaintiff alleges he "was in fear for his life and freedom" and thus sent an email to a friend about contacting a lawyer and Black Lives Matter regarding his assault.  (Id. ¶ 35).  Plaintiff believes Serringer saw the email, because Serringer allegedly remarked to plaintiff, "this is my building" and "you shouldnt have sent that email."  (Id.).  Further, although plaintiff alleges he lost his recreation privileges because he beat up Evans and was prohibited from going outdoors, plaintiff asked Serringer if he could go outdoors.  Serringer allegedly told plaintiff to go outside in the yard, saying "sure it dosent matter, you'll be found witha weaopon." (Id. ¶ 36).  Plaintiff also alleges Serringer "conspired" with other defendants—including Venettozzi and Rodriguez—to violate plaintiff's First, Eighth, and Fourteenth Amendment rights.  (Id. at ECF 7 ¶ B3.0, ECF 33 ¶ 103).

As plaintiff went outside, C.O. Albert allegedly requested to pat and frisk plaintiff, despite letting fifteen other inmates outside without a search.  Next, plaintiff states he saw C.O. Lopez approach him with a canister of mace, while Albert attempted a "dive-move" to plant a weapon—a sharpened pink toothbrush—on plaintiff.  (Compl. at ECF 18 ¶ 37; see Ex. D at ECF 45).  Lopez allegedly released mace and plaintiff fled and passed by C.O. Prince, until plaintiff eventually slid to the ground, landed flat on his stomach, and yelled, "i give up."  (Compl. at ECF 18 ¶¶ 37–38).  Plaintiff also alleges Lopez "assisted in covering up the violations and lied on record to ensure that the culprits conspiracy ended in satisfactory."  (Id. at ECF 8 ¶ C3).

Thereafter, plaintiff claims C.O.s Prince, Albert, and Nienstedt jumped on his back, slammed his head onto the concrete floor, and kicked and punched him in the neck, chest, and stomach, and Nienstedt told the others not to aim for plaintiff's face.  (Compl. at ECF 18 ¶¶ 39–40).  During the alleged assault, plaintiff alleges the officers yelled, "you think your just gonna snitch on us, we told you this wasent ulster right?" and warned him not to fight back.  (Id. ¶ 39).  Plaintiff also alleges Prince conspired with other defendants to imprison him in the SHU (Id. at ECF 8 ¶ C), and that Albert and Nienstedt "assisted in the mass conspiracy" to assault plaintiff and cover it up, with Nienstedt forging state records.  (Id. at ECF 8 ¶¶ C2, C4)

III.   Medical Examination and Plaintiff's Complaint

Following the April 21, 2021, Incident, plaintiff alleges he was placed in the Special Housing Unit ("SHU").  Upon arrival, Nurse Pitt allegedly examined plaintiff in C.O. Walden's presence.  According to plaintiff, Pitt asked him whether he had any injuries and whether anyone had tried to make sexual contact with him since he arrived at Fishkill.  Plaintiff alleges he answered yes to both questions, and told her, "you cant tell" that he had injuries.  (Compl. at ECF 21 ¶ 45).  Plaintiff then allegedly told Pitt he was "prescribed ibuprofen and albuterol" and was in pain.  (Id.).  Pitt then purportedly got plaintiff ibuprofen, yet did not denote plaintiff's allegations of sexual misconduct on an Inmate Injury Form.  (Id.; see Ex. E at ECF 50 ("Injury Form")).  Instead, the Injury Form, signed by Pitt, states "inmate refused to issue any statement at this time" and notes plaintiff had "no visible body injury noted at this time" and that plaintiff was "stable."  (See Injury Form).  According to the Injury Form, plaintiff refused to sign it.  (Id.).

Next, C.O. Figueroa allegedly approached plaintiff to photograph his injuries.  But in the pictures, plaintiff alleges he was fully clothed and only his face was visible, which C.O. Nienstedt allegedly told the assaulting officers to avoid during the April 21 Incident.  Although

plaintiff alleges his injuries were not properly photographed, the Ambulatory Health Record Progress Note dated April 21 and signed by Pitt states, "Inmate viewed 360 [degrees] in boxers. No Visible bodily injury noted."  (Ex. F at ECF 53).  Because of his purportedly inadequate medical care, plaintiff states he suffered a swollen hand, bruised ribs, swollen shoulders, and stomach pains that rendered his "digestive system useless for up to" two weeks.  (Compl. at ECF 22 ¶ 47).

Further, plaintiff alleges Pitt, Walden, and Figueroa "conspired" to "cover up" his "assault and sexual harassment by way of forging [plaintiff's] responses to the medical inquiry." (Compl. at ECF 8 ¶ C6, ECF 22 ¶¶ 45–46).

On May 13 and around June 21, plaintiff alleges ORC Losi placed plaintiff on a call with a "supposed" PREA "advocate" who informed plaintiff that Losi encouraged her to try to "quell the plaintiffs desire to file complaints about the abuse and phon[e] tampering."  (Compl. at ECF 34 ¶ 110).

IV.   Disciplinary Hearing

At a disciplinary hearing on an unspecified date, before Hearing Officer Mayes, plaintiff alleges Mayes ignored contradictions on the record, dismissed plaintiff's questions trying to elucidate such contradictions, and failed to obtain plaintiff's explanation for not attending an earlier hearing on May 11, 2021.  (Compl. at ECF 33–34 ¶¶ 101–103).  Ultimately, plaintiff alleges within forty-eight hours, defendant Rodriguez—as designee of Venettozzi, Director of Special Housing/Inmate Disciplinary Program—reviewed plaintiff's "automatic appeal" of Mayes's decision, and Venettozzi issued a decision affirming Mayes.  (Id. at ECF 33 ¶¶ 104–105).  Further, Superintendent Burnett allegedly deprived plaintiff of a liberty interest by

inadequately "reviewing and acting upon" plaintiff's appeal.  (Id. ¶ 106; see Ex. K-12 at ECF 89;

Ex. M-1, M-2 at ECF 101–02).

V.    Cell Search

  Around June 27, 2021, C.O.s Drexler, Walden, and Kitson allegedly removed plaintiff

from his cell to conduct a cell search.  After asking Sgt. Santos for his legal paperwork, plaintiff

claims he returned to his cell to find defendants discarded his "essential" documents, including

certified mail receipts, a copy of plaintiff's Ulster Action notice of intention, letters from female

staff members, and documents containing C.O.s' badge numbers and cash apps.  (Compl. at ECF

25 ¶ 62).  This allegedly caused plaintiff to "plead the complaint inadequately."  (Id. ¶¶ 62–63).

VI.   Suicide Attempt and Sexual Assault

  The next day, June 28, 2021, plaintiff, who alleges he was already on suicide watch, told

C.O. Downer about his suicidal thoughts, who in turn informed Santos.  (Compl. at ECF 26 ¶¶

68–69).  Officers then purportedly transferred plaintiff to a new cell nearby.  Upon entering the

new cell, plaintiff claims Downer focused plaintiff's attention on a 13-inch "altered bed line" and

winked.  (Id. ¶ 71).  Around 11:45 p.m., plaintiff alleges C.O. Buckham replaced Downer.  And

within minutes, Buckham allegedly "walked closely to" plaintiff's "cell door, gave the plaintiff a

condescending stare, nodded his head at the altered line and then walked away for up to five

minutes."  (Id. ¶ 72).  According to plaintiff, this violated a protocol for officers "tasked with 1

on 1 watch," which requires an officer "have eyes on the subject for the duration of his shift."

(Id.).  During this time, plaintiff used the altered line to attempt suicide by hanging.  Plaintiff

alleges Downer "conspire[ed] with and initiat[ed] his suicide attempt."  (Id. at ECF 30 ¶ 93).

  Thereafter, Buckham, Santos, and Downer allegedly got plaintiff down and laid him on

his back.  At this point, plaintiff alleges Santos turned his body camera off,  Downer was

positioned on the bottom half of plaintiff's body, and Buckham was positioned over the top half of plaintiff's body.  Then, Buckham allegedly put his hands under plaintiff's smock and "fondle[d]" plaintiff's "genitals for up to 30 seconds."  (Compl. at ECF 27 ¶ 76).

After, plaintiff alleges he went to the medical unit, where he states Fishkill staff tried to force plaintiff to sign a false statement stating he used his "face mask to hang" himself, which was also noted on documentation from Putnam Hospital Center—where plaintiff was ultimately taken for evaluation and treatment.  (Compl. at ECF 27 ¶¶ 77–78; see Ex. J at ECF 67).  According to plaintiff, Santos's body camera footage could reveal plaintiff's face mask was lying untouched on his bunk "completely intact without a stitching out of place."  (Compl. at ECF 29 ¶ 83).

VII.   <u>PREA Complaint</u>

Once he returned to Fishkill from the hospital, plaintiff alleges he attempted to report his sexual assault to Sgt. Campbell and Nurse Administrators Furco and Osselman.  In response, according to plaintiff, Campbell said he would inform the Watch Commander and Furco told him, "it's not cool to file false complaints."  (Compl. at ECF 28–29 ¶ 85).  After Furco's comment,  Osselman purportedly tried to obtain plaintiff's "recant signature," which plaintiff refused.  (Id. at ECF 29 ¶¶ 86–87).  DOCCS Health Provider Progress Notes dated June 29, 2021, state that, at 4:43 p.m., plaintiff "[n]ow wants to claim PREA too many people to name, this is entertainment for me but you gotta do it."  (Ex. J-6 at ECF 73).  And at 4:50 p.m., the Notes indicate Nurse Osselman was "notified" of plaintiff's "recant of PREA claim."  (Id.).  In addition, plaintiff alleges Campbell, Furco, and Osselman conspired with one another "to forge" a "false response beneficial to the cuprits of the sexual assault."  (Compl. at ECF 10 ¶¶ E5–E7).

On July 20, plaintiff alleges he verbally informed Deputy Superintendent Wood that his legal mail was tampered with, he had been sexually harassed and assaulted, was currently being harassed, and his attempts to report this were being intercepted.  Plaintiff then allegedly wrote a letter to Wood, at Wood's request, documenting these concerns regarding "the ongoing and past constitutional violatins."  (Compl. at ECF 34 ¶ 108; see Ex. K8 at ECF 95).  Plaintiff alleges Wood told him to write a letter so he could initiate an investigation, yet Wood never responded to plaintiff's letter or took any action.

Plaintiff alleges he "was never able to successful prea complaint due to staff corruption" yet he acknowledges receiving a letter dated August 13, from Prisoners' Legal Services of New York confirming they filed a PREA complaint on his behalf.  (Compl. at ECF 34–35 ¶ 111; see Ex. G-2 at ECF 57).

VIII.   Package Room Incident

On February 14, 2022, plaintiff alleges he "was summoned to the package room," where he questioned C.O. Piggee regarding why he was being denied tobacco.  (Compl. at ECF 36 ¶ 114).  Piggee allegedly told plaintiff the tobacco was "sweet" and that he could not "have flavored tobacco," and refused to give it to plaintiff.  (Id.).  Next, plaintiff alleges Piggee slapped him and told him to leave, which plaintiff did.  While exiting through the mess hall, plaintiff states he encountered C.O.s Lavalle and Carbone, who questioned plaintiff about his "problem" with Piggee.  (Id. ¶ 115).  Next, Lavalle allegedly restrained plaintiff while Carbone beat him.  Plaintiff also alleges Piggee, Carbone, and Lavalle "conspired" with one another to assault him.  (Id. at ECF 11 ¶ I1).

**DISCUSSION**

I.    <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id.</u> at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the Compl. must meet a standard of

"plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

The Court must liberally construe submissions of <u>pro se</u> litigants and interpret them "to

raise the strongest arguments that they suggest."  <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam).  Applying the pleading rules permissively is particularly

appropriate when, as here, a <u>pro se</u> plaintiff alleges civil rights violations.  <u>Sealed Plaintiff v.</u>

<u>Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a <u>pro se</u> case, however, . . .

threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the

Court "invent factual allegations" a plaintiff has not pleaded.  <u>Id</u>.

II.     <u>First Amendment Claims</u>

Defendants move to dismiss plaintiff's First Amendment claims for (i) retaliation against

Serringer; and (ii) denial of access to courts against Jimenez, Tracy, Harkins, Drexler, Walden,

Kitson, and Serringer.[7]

A.     <u>Retaliation</u>

Defendant Serringer argues plaintiff fails to establish causation necessary to support a

retaliation claim.

The Court agrees.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly

allege (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took

adverse action against him, and (iii) the protected speech and adverse action are causally

connected.  <u>Dolan v. Connolly</u>, 794 F.3d 290, 294 (2d Cir. 2015).  Regarding the third element, a

plaintiff must allege a causal connection "sufficient to support the inference that the [protected]

speech played a substantial part" in the adverse action.  <u>Diesel v. Town of Lewisboro</u>, 232 F.3d

92, 107 (2d Cir. 2000).  "Courts may infer a retaliatory motive from a variety of factors,

including the timing" of the alleged retaliatory action and its "temporal proximity" to the initial

_____

[7]     Defendants state they are not moving to dismiss plaintiff's First Amendment denial of
access to courts claim against defendants Ortiz and Del Bianco.  (<u>See</u> Doc. #63 ("Defs. Mem." at
1 n.1).  And to the extent defendants argue plaintiff fails to state a First Amendment denial of
access to courts claim against defendant Losi in their header for Point I (<u>see</u> Defs. Mem. at 8),
defendants proffer no arguments in support.  (<u>See id</u>. at 8–11).  Accordingly, plaintiff's
aforementioned First Amendment claims referenced in this footnote may proceed.

13

grievance or complaint.  Mateo v. Bristow, 2013 WL 3863865, at *6 (S.D.N.Y. July 16, 2013).

Plaintiff alleges C.O. Serringer violated his First Amendment right "by retaliating agai[ns]t me for sending an email where i wished to exhaust my first amendment right."  (Compl. at ECF 21 ¶ 41).  On April 21, 2021, plaintiff alleges he sent the relevant email to a friend, in which plaintiff expressed a desire to get in contact with someone from Black Lives Matter and a lawyer.  Plaintiff alleges no retaliatory actions by Serringer after plaintiff sent the email.  Rather, he solely alleges that before plaintiff sent the email, also on April 21, Serringer threatened him by saying, "you can either be my bitch or get found with a weapon."  (Id. at ECF 17 ¶ 34).  However, "[b]ecause the alleged retaliation occurred before plaintiff engaged in the alleged protected activity, plaintiff's retaliation claim must be dismissed."  Harper v. City of New York, 2011 WL 3463156, at *7 (S.D.N.Y. Aug. 5, 2011); see Zherka v. Bogdanos, 411 F. App'x 440, 441 (2d Cir. 2011) (summary order) (affirming dismissal of retaliation claim where allegedly retaliatory action "was well under way long before the protected speech [plaintiff] claim[ed] provoked the retaliation").

Accordingly, plaintiff's retaliation claim against Serringer must be dismissed.

B.     Denial of Access to Courts

Defendants C.O.s Jimenez, Tracy, Harkins, Drexler, Walden, Kitson, and Serringer argue plaintiff fails to state a denial of access to courts claim because he does not allege actual injury.

The Court agrees.

To state a constitutional claim for denial of access to the courts, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  To establish actual injury, the denial of

access must have frustrated or impeded the plaintiff's efforts in pursuing a "nonfrivolous legal claim." Lewis v. Casey, 518 U.S. 343, 352–53 (1996). "Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right." Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995).

Plaintiff alleges Jimenez, Tracy, and Harkins engaged in a "continuous cycle of hostile language and acts" which led him to "ceas[e] pursuit of his first amendment right." (Compl. at ECF 14 ¶ 22, ECF 20 ¶ 12). He also alleges Drexler, Walden, and Kitson searched his cell and discarded "essential" legal documents causing plaintiff to "plead the complaint inadequately." (Id. at ECF 25 ¶¶ 62–63). Finally, plaintiff alleges Serringer allegedly told him to "leave the ulster shit alone." (Id. at ECF 17 ¶ 32).

However, plaintiff fails to allege he suffered any actual injury as a result of this conduct. To the extent plaintiff alleges these defendants' threats dissuaded him from pursuing claims related to constitutional violations at Ulster, plaintiff admits he had a notice of intention for that action notarized on February 16, 2021, and he does not allege that defendants Drexler, Walden, and Kitson searched his cell (and that the notice of intention was discarded) until four months later on June 27, 2021. Further, although plaintiff argues he intended to pursue the Ulster Action in state court rather than federal court, that does not establish actual injury because he was still able to pursue these claims (albeit in federal court). Finally, as to plaintiff's allegation there are "no state claims in New York State Court of Claims" because these defendants' "plan worked" in that plaintiff was not able to file a claim within the New York Court of Claims's 90-day deadline (Opp. at ECF 2), plaintiff successfully filed a complaint regarding the Ulster Action in

the Northern District of New York on October 6, 2021.  See Dubose v. Wendland, 9:21-CV-01091 (Doc # 1).[8]

And to the extent plaintiff alleges he was prevented in some way from pursuing the instant action, that claim must be rejected because he has, obviously, pursued this lawsuit.  In fact, plaintiff acknowledges that, with respect to this action, there is "of yet no injury."  (Opp. at ECF 3).  Even without this acknowledgement, plaintiff fails to demonstrate how the missing documents would impact this Court's decision.  Cf. Smith v. Maypes-Rhynders, 2009 WL 874439, at *7–8 (S.D.N.Y. Mar. 31, 2009) (finding actual injury where, but for defendants' confiscation of plaintiff's legal papers, plaintiff would have prevailed).  Thus, plaintiff does not plausibly allege he was prevented from or hindered in pursuing a meritorious claim, and therefore, that he was actually injured.[9]

---

[8]    The Court takes judicial notice of court filings in other litigation, not for their truth but for the fact that such filings were made and that other litigation exists.  See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).

[9]    Plaintiff also requests equitable tolling to provide additional documentation to prove actual injury.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."  Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011).  "[T]he critical issue here is whether or not" plaintiff was "completely foreclosed from seeking a judicial remedy."  Olivia v. Town of Greece, N.Y., 71 F. Supp. 3d 368, 375 (W.D.N.Y. 2014), aff'd, 630 F. App'x 43 (2d Cir. 2015).  Courts in this district "have suggested that the doctrine of equitable tolling presents such an alternative available means for a plaintiff to pursue his 'lost' claims, at least in the context of habeas corpus relief."  Shomo v. Dep't of Corr. & Comm. Supervision, 2019 WL 7971871, at *9 (N.D.N.Y. Oct. 7, 2019) (collecting cases), report and recommendation adopted, 2020 WL 486868 (Jan. 30, 2020).

Here, however, plaintiff cannot take advantage of equitable tolling because (i) his complaint in this action was not untimely; (ii) there are no allegations that his complaint in the Ulster Action was untimely; and (iii) plaintiff has not demonstrated how additional

16

Accordingly, plaintiff's denial of access to the courts claim against C.O.s Jimenez, Tracy, Harkins, Drexler, Walden, Kitson, and Serringer must be dismissed.

III.   Eighth Amendment Claims

Defendants move to dismiss several of plaintiff's Eighth Amendment claims: (a) excessive force against C.O. Piggee; (b) failure to intervene against C.O. Lopez; (c) sexual abuse against C.O.s Drexler, Bianchi, Buckham, and Lopez; (d) deliberate indifference to medical needs against Nurse Pitt and C.O. Walden; (e) failure to protect against Nurse Pitt, Sgt. Campbell, Nurse Administrators Osselman and Furco, Sgt. Figueroa, C.O. Buckham, and Deputy Superintendent Wood; and (f) deliberate indifference based on verbal threats against C.O.s Jimenez, Harkins, Tracy, Del Bianco, Ortiz, Serringer, Drexler, Nelson, Bianchi, and Lopez.[10]

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to give rise to prisoner claims for (a) excessive force, Farmer v. Brennan, 511 U.S. 825, 832 (1994); (b) failure to intervene in a deprivation of constitutional rights, Jean-Laurent v. Wilkerson, 461 F. App'x 18,

---

documentation would purportedly demonstrate actual injury, as he has not allegedly been completely foreclosed from pursuing his claims—as demonstrated by his successful initiation of both lawsuits.

[10]     Defendants state they are not moving to dismiss plaintiff's Eighth Amendment claims for (i) excessive force against Harkins, Albert, Prince, Nienstedt, Lavalle, and Carbone; (ii) sexual assault against Downer; (iii) failure to protect against Harkins, Santos, Lavalle, and Carbone; (iv) deliberate indifference against Downer.  (Defs. Mem. at 1 n.1).

     To the extent defendants argue plaintiff fails to state an Eighth Amendment claim for failure to protect against defendant Walden in their Point II.F header (see Defs. Mem. at 18), defendants proffer no arguments in support.  (See id. at 18–20).

     In addition, defendants do not move to dismiss plaintiff's Eighth Amendment claims for failure to intervene against defendant Ortiz or failure to protect against Downer and Losi.

     Accordingly, these claims may proceed.

21 (2d Cir. 2012) (summary order); (c) sexual abuse, <u>Boddie v. Schnieder</u>, 105 F.3d 857, 860–61 (2d Cir. 1997); (d) deliberate indifference to medical needs, <u>Estelle v. Gamble</u>, 429 U.S. 97, 104–06 (1976); (e) failure to protect, <u>Hayes v. N.Y.C. Dep't of Corrs.</u>, 84 F.3d 614, 620 (2d Cir. 1996); and (f) deliberate indifference, <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  To state an Eighth Amendment claim, a prisoner must plausibly allege an objective prong—that the deprivation of rights was objectively serious—and a subjective prong—that the prison official acted with requisite <u>mens</u> <u>rea</u>.  <u>See, e.g.</u>, <u>Wright v. Goord</u>, 554 F.3d 255, 268–69 (2d Cir. 2009).

Moreover, to state any Section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 616 (2d Cir. 2020) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)).

A.    <u>Excessive Force</u>

Defendant Piggee argues plaintiff fails plausibly to allege she used excessive force. The Court disagrees.

The objective prong of an excessive force claim "focuses on the harm done, in light of contemporary standards of decency," including "whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  <u>Wright v. Goord</u>, 554 F.3d at 268 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  However, "when prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident."  <u>Id</u>. at 268–69 (quoting <u>Hudson v. McMillian</u>, 503 U.S. at 9).  Courts look at several factors including:  "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived

by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003).

Plaintiff alleges Piggee slapped him after they argued about tobacco.  Although courts have "held that a single slap that results in no injury constitutes unactionable, de minimis force," Lewis v. Huebner, 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) (collecting cases), at this early stage, the Court cannot conclude "the slap was applied in a good faith effort to maintain or restore discipline, rather than maliciously or sadistically to cause harm."  See Benjamin v. Flores, 2012 WL 5289513, at *4 (E.D.N.Y. Oct. 23, 2012).

Accordingly, plaintiff's excessive force claim against Piggee may proceed.

B.    Failure to Intervene

Defendant Lopez argues plaintiff's failure to intervene claim fails because he does not assert Lopez had a realistic opportunity to prevent the use of excessive force.

The Court disagrees.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be."  Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order).  However, "for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  Id.

Plaintiff alleges Lopez was "present during the assault" by C.O.s Prince, Albert, and Nienstedt on April 21, released mace during the assault, and "failed to intervene and terminate the assault."  (Compl. at ECF 8 ¶ C3).  Thus, although plaintiff admits to subsequently running

19

away from Lopez when he saw that she was approaching and releasing mace, at this early stage, he plausibly alleges Lopez witnessed plaintiff's assault by C.O.s Prince, Albert, and Nienstedt and thus that she could have intervened.

Accordingly, plaintiff's failure to intervene claim against C.O. Lopez may proceed.

C.      Sexual Abuse

Defendants Buckham, Bianchi, Drexler, and Lopez argue plaintiff fails plausibly to allege a sexual abuse claim.

The Court disagrees as to Buckham, but agrees as to Bianchi, Drexler, and Lopez.

Under the Eighth Amendment, conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997). Although sexual harassment not sufficiently "severe or repetitive" does not satisfy the objective prong, id. at 861, "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015).

To adequately plead the objective prong, a plaintiff asserting an Eighth Amendment sexual abuse claim generally must allege physical contact. See Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (collecting cases). When analyzing the subjective prong, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Crawford v. Cuomo, 796 F.3d at 257–58.

20

Plaintiff alleges Buckham "assist[ed] defendant Downer in sexually assaulting" plaintiff. (Compl. at ECF 31 ¶ 94). Specifically, plaintiff states Buckham was "positioned over" the top half of plaintiff's body while defendant Downer allegedly fondled plaintiff's genitals under his smock. (Id. at ECF 27 ¶ 76). Drawing all reasonable inferences in plaintiff's favor, this allegation could be construed as alleging that Buckham physically immobilized plaintiff so Downer could assault him. Thus, at this early stage in the litigation, such allegations are sufficient to satisfy both the objective and subjective prongs.

Plaintiff alleges Bianchi and Drexler both asked to see plaintiff's penis on one occasion. Further, plaintiff alleges Bianchi threatened to withhold plaintiff's food if he did not comply. Without allegations that these defendants made physical contact with plaintiff, his claim fails because "an allegation that a corrections officer verbally propositioned a prisoner on a single occasion, without engaging in any physical activity, simply does not rise to the level of an Eighth Amendment violation." Jones v. Harris, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009).

Plaintiff alleges "on multiple occasions," Lopez requested plaintiff "commit sexual favors" in exchange for plaintiff being "left alone" and Lopez applied "tremendous" pressure on plaintiff. (Compl. at ECF 9 ¶ D2). Plaintiff's failure to allege Lopez touched him likewise disposes of his claim, as verbal harassment alone is insufficient to violate the Eighth Amendment. See, e.g., Avila v. Tenzie, 2021 WL 2882445, at *5 (S.D.N.Y. July 9, 2021) (recommending dismissal of prisoner's sexual misconduct claim where plaintiff made "no allegations of physical action, touching, or abuse by [defendant] other than" one "conclusory allegation"), report and recommendation adopted, 2021 WL 3494726 (S.D.N.Y. Aug. 7, 2021).

Accordingly, plaintiff's sexual abuse claim against Buckham may proceed. However, his sexual abuse claim against Bianchi, Drexler, and Lopez must be dismissed.

D.    <u>Deliberate Indifference to Medical Needs</u>

Defendant Pitt contends plaintiff's deliberate indifference to medical needs claim against her must be dismissed because plaintiff has not alleged a sufficiently serious inadequacy in his medical care.  Defendant Walden argues plaintiff's deliberate indifference to medical needs claim against him must be dismissed because plaintiff fails plausibly to allege Walden was personally involved.

The Court agrees.

To state a deliberate indifference to medical needs claim, a plaintiff must plausibly allege (i) the objective prong—a "sufficiently serious" inadequacy of medical care, and (ii) the subjective prong—that the officials in question acted with a "sufficiently culpable state of mind." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts.

First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." <u>Salahuddin v. Goord</u>, 467 F.3d at 279.  Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "to take reasonable measures in response to a medical condition." <u>Id</u>. at 279–80 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994)).

Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." <u>Salahuddin v. Goord</u>, 467 F.3d at 280.  Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." <u>Id</u>.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." <u>Id</u>.  But if the offending conduct is the "medical treatment given, the

22

seriousness inquiry is narrower." Id.  Then, courts look to "the alleged inadequate treatment, not the underlying condition alone," and consider "the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls."  Sanders v. City of New York, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018).  Disagreement between a plaintiff and his medical providers does not form the basis for a medical-needs claim.  See, e.g., Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

To plead the subjective prong, a plaintiff must allege the prison official acted with "deliberate indifference," which is the equivalent of "subjective recklessness."  Salahuddin v. Goord, 467 F.3d at 280.  "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was aware of facts from which one could infer that a substantial risk of serious harm existed, and that the defendant actually drew that inference."  Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order).

Regarding Nurse Pitt, plaintiff does not plausibly allege a sufficiently serious inadequacy in plaintiff's medical care.  Notwithstanding plaintiff's allegation that Pitt did not give him "any form of medical care" (Compl. at ECF 8 ¶ C6), as of April 24, 2021, plaintiff acknowledged having received two motrin (ibuprofen) upon initial examination.  (Ex. G at ECF 54).  Nevertheless, plaintiff alleges this treatment was inadequate because he was deprived of his "prescribed" ibuprofen, and "left in significant pain for an extended period of time."  (Compl. at ECF 21–22 ¶¶ 45, 47).  Further, plaintiff allegedly suffered bruised ribs, a swollen hand and shoulders, as well as stomach pains that rendered his digestive system "useless" for "up to two weeks."  (Id. at ECF 22).  However, these "conditions do not amount to 'serious' medical needs that can be the basis for a constitutional claim."  Blanch v. Schiff, 2018 WL 3117508, at *13 (S.D.N.Y. Mar. 26, 2021) (dismissing Eighth Amendment medical indifference claim when

plaintiff alleged "he was provided some care, including ibuprofen . . . and he has not alleged that inadequate treatment was sufficiently serious such that it resulted in degeneration, or extreme pain"); see also Boykins v. Lopez, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022) ("[D]istrict courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim.").

Regarding C.O. Walden, plaintiff solely alleges he "was present" for Nurse Pitt's examination and medical dispensation.  (Compl. at ECF 21–22 ¶ 45).  However, absent allegations that Walden has medical training or the ability to affect plaintiff's medical treatment, mere presence in an infirmary setting is insufficient to support a claim for medical indifference. See Blaylock v. Borden, 547 F. Supp. 2d 305, 314 (S.D.N.Y. 2008).

Accordingly, plaintiff's deliberate indifference to medical needs claims against Pitt and Walden must be dismissed.

E.    Failure to Protect

Defendants Buckham, Campbell, Figueroa, Furco, Osselman, Pitt, Walden, and Wood argue plaintiff fails plausibly to state a failure to protect claim based on plaintiff's alleged emotional, physical, and sexual abuse by Fishkill staff.[11]

The Court agrees, except as to defendants Buckham and Wood.

1.    Legal Standard

A failure to protect claim arises when prison officials act "with deliberate indifference to the safety of the inmate."  Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996).

---

[11]    In addition, plaintiff's complaint contains allegations regarding a failure to protect claim against defendant Losi.  However, defendants do not move to dismiss this claim; thus, plaintiff's failure to protect claim against Losi may proceed.

To plead the objective prong, a plaintiff must plausibly allege the prison official's conduct was sufficiently serious, meaning that the conduct "pose[d] an unreasonable risk of serious damage to [the plaintiff's] health." Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

To plead the subjective prong, a plaintiff must plausibly allege the defendant knew of a substantial risk of serious harm to the inmate and disregarded that harm by failing to take reasonable measures to abate it. Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d at 620. The defendant officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).

"[A]n inmate's communications about generalized safety concerns or vague concerns of future assault by unknown individuals are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." Anselmo v. Kirkpatrick, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019) (collecting cases). Rather, an Eighth Amendment failure-to-protect claim lies when the plaintiff "alleges that he informed corrections officers about a specific fear of assault and [was] then assaulted." Tubbs v. Venettozzi, 2019 WL 2610942, at *5 (N.D.N.Y. June 26, 2019). "Courts routinely deny deliberate indifference claims based upon surprise attacks." Fernandez v. N.Y.C. Dep't of Corr., 2010 WL 1222017, at *4. Further, "[m]ere negligence by a prison officer does not establish a claim for deliberate indifference to [a] prisoner's safety." Id.

2.      Pitt, Walden, and Figueroa

Plaintiff alleges Nurse Pitt, C.O. Walden, and C.O. Figueroa did not report his allegations of sexual misconduct and "forg[ed]" medical documents to inaccurately document his injuries from the April 21 Incident.  (Compl. at ECF 22 ¶¶ 47–49).  Further, plaintiff alleges he "would have been interviewed and placed in a safer environment" if Nurse Pitt had reported plaintiff's affirmative response to her question about attempted sexual assault.  (Id. ¶ 47).  And Figueroa and Walden purportedly were present in the medical unit during plaintiff's evaluation after the April 21 Incident, and had "full knowledge of [plaintiff's] assault wounds"; thus, plaintiff alleges they were "obliged to report" the overheard allegations to a higher authority.  (Id. ¶¶ 48–49).

Plaintiff does not allege he told Pitt, Walden, or Figueroa who made sexual contact with him, that he feared another such encounter, or that these defendants had reason to know of a risk of serious future harm to plaintiff.  According to plaintiff, he said during the medical examination that he had injuries that Pitt could not see, and that he responded "yes" to the question of whether "any one tryed to have sexual contact" with plaintiff.  (Compl. at ECF 21 ¶ 45).  Thus, because plaintiff only alleges he shared "vague concerns about safety" based on prior alleged assaults, he cannot state a failure to protect claim against these defendants.  See Robinson v. Spanno, 2021 WL 1109053, at *5 (S.D.N.Y. Mar. 23, 2021) ("[C]ourts have found vague concerns about safety from future assault by unknown individuals . . . are insufficient for [a defendant] to have inferred the existence of a substantial risk.") (collecting cases).

Accordingly, plaintiff's failure to protect claim against Pitt, Walden, and Figueroa must be dismissed.

26

3.       Campbell, Furco, and Osselman

Plaintiff alleges Sgt. Campbell, Nurse Administrator Furco, and Nurse Administrator

Osselman failed to protect him by not properly documenting plaintiff's responses about his

sexual assault, and because plaintiff did not receive adequate assistance, an investigation was not

started, and plaintiff was not "placed in a protected environment" or "moved to safety."  (Compl.

at ECF 30 ¶¶ 90–91).  Instead, plaintiff allegedly was returned "to the same facility where he has

still been getting abused to date" and the same "environment that forced him to attempt suicide."

(Id.).

Nevertheless, plaintiff does not allege that, in his complaints to these defendants, he

specified who he feared would abuse him or what future abuse he was facing.  Plaintiff alleges

he informed these defendants that he did not use his face mask to try to hang himself.  (Compl. at

ECF 28 ¶ 84).  From the exhibits attached to plaintiff's complaint, it also appears plaintiff made

PREA complaints to a nurse regarding "too many people to name," but not that he made any

complaints of future anticipated abuse.  (Ex. J6 at ECF 73).

Moreover, plaintiff does not allege he suffered additional sexual abuse following his

interactions with Campbell, Furco, and Osselman that these defendants failed to protect him

from.  To the extent plaintiff refers to the alleged February 2022 incident in the package room,

the Court would consider this an unrelated and non-cognizable "surprise attack," as plaintiff does

not allege it involved sexual abuse or that he previously was involved in an altercation with

C.O.s Piggee, Carbone, and Lavalle.  Fernandez v. N.Y.C. Dep't of Corrs., 2010 WL 1222017, at

*4 (S.D.N.Y. Mar. 29, 2010).

As to plaintiff's allegation that Campbell, Furco, and Osselman had reason to know of

plaintiff's suicide attempt, yet plaintiff was returned to the environment which led him to attempt

27

suicide, plaintiff does not allege he continues to experience suicidal ideations or that he has attempted to commit suicide again.  Therefore, even drawing all reasonable inferences in plaintiff's favor, plaintiff has not alleged what these defendants failed to protect him from.

Accordingly, plaintiff's failure to protect claims against Campbell, Furco, and Osselman must be dismissed.

> 4.   Wood

Plaintiff alleges Deputy Superintendent Wood, as a supervisor, failed to protect plaintiff by not investigating plaintiff's verbal allegations and written allegations from his letter dated July 11, 2021.

Here, plaintiff plausibly alleges Wood was personally involved such that he can be held liable for failure to protect.  "Although the failure to remedy a wrong is defined as one way in which a supervisor may become personally involved," for purposes of a Section 1983 claim, "an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." Randle v. Alexander, 960 F. Supp. 2d 457, 478 (S.D.N.Y. 2013) (collecting cases).  However, drawing all reasonable inferences in plaintiff's favor, his allegations that he verbally told Wood that he had been sexually assaulted and harassed, including "ongoing" harassment (Compl. at ECF 34 ¶ 108), along with the allegation that Wood failed to investigate plaintiff's claims, are sufficient at this stage to demonstrate Wood—as a supervisor—failed to remedy a wrong that posed an unreasonable risk of serious damage to plaintiff's health.

Accordingly, plaintiff's failure to protect claim against Wood may proceed.

     5.    <u>Buckham</u>

Plaintiff alleges C.O. Buckham deliberately left his watch post for five minutes to give plaintiff time to attempt suicide, while knowing plaintiff was on suicide watch and that plaintiff had a bedline in his cell that he could use to attempt suicide.

Although defendants argue Buckham's absence was simple negligence rather than failure to protect, the Court finds plaintiff plausibly alleges Buckham's absence was deliberate and posed an unreasonable risk to plaintiff's safety.  Indeed, plaintiff alleges he did attempt suicide during Buckham's absence, by using a bedline that Buckham purportedly nodded to before walking away.  Moreover, plaintiff plausibly alleges as part of suicide watch protocol, Buckham was responsible for having "eyes" on plaintiff at all times.  (Compl. at ECF 26 ¶ 72).

Thus, at this early stage, the Court "is willing to assume" plaintiff has plausibly alleged Buckham's absence from his post "may have put [p]laintiff at a substantial risk of serious harm." See <u>Rennalls v. Alfredo</u>, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015).  And plaintiff plausibly alleges that, by walking away from the watch post intended to protect plaintiff from committing suicide, Buckham exhibited deliberate indifference to plaintiff's safety.

Accordingly, plaintiff's failure to protect claim against Buckham may proceed.

    F.    <u>Deliberate Indifference</u>

Defendants Jimenez, Tracy, Harkins, Ortiz, Del Bianco, Serringer, Drexler,[12] Nelson, and Bianchi argue plaintiff fails plausibly to allege a deliberate indifference claim against them because verbal threats alone are not actionable under the Eighth Amendment.

---

[12]    Although defendants stated they were not moving to dismiss plaintiff's deliberate indifference claim against Drexler (Defs. Mem. at 1 n.1), later in their memorandum, they argue plaintiff fails to state a deliberate indifference claim against Drexler based on verbal rumors.  (<u>Id</u>. at 12).  Accordingly, the Court construes defendants' memorandum to move to dismiss this claim against Drexler.

The Court agrees.

To state a deliberate indifference claim, a plaintiff must plausibly allege (i) he suffered a sufficiently serious constitutional deprivation, and (ii) defendants acted with deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  However, "verbal harassment, without more, is not actionable under § 1983" in the prison setting.  See Williams v. Dubray, 557 F. App'x 84, 86 (2d Cir. 2014) (summary order).

Plaintiff alleges Jimenez, Tracy, and Harkins verbally threatened him.  But plaintiff does not allege he was physically harmed by these threats, and to the extent he alleges consequential psychological and emotional harm, such allegations are conclusory and insufficient to state a claim.  See, e.g., Matthews v. N.Y. State Dep't of Corrs. & Cmty. Superv., 2020 WL 1030647, at *6 (N.D.N.Y. Mar. 3, 2020).

In addition, plaintiff alleges Ortiz and Del Bianco told other inmates plaintiff was gay and "would masturbate for male staff" (Compl. at ECF 15 ¶ 26), Serringer told other inmates plaintiff was an informant (id. at ECF 17 ¶ 33), and Drexler, Nelson, and Bianchi "spread false rumors" about plaintiff to other inmates.  (Id. at ECF 23 ¶¶ 50, 53).  Again, plaintiff does not allege he was actually injured because of these rumors, and "[f]ear of assault, by itself, does not constitute a sufficiently serious injury to state a claim for failure to protect."  Best v. City of New York, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012).

Accordingly, plaintiff's deliberate indifference claim against Jimenez, Tracy, Harkins, Ortiz, Del Bianco, Serringer, Drexler, Nelson, and Bianchi, based on their verbal comments and threats, must be dismissed.

IV.   Fourteenth Amendment Claim

Defendants Mayes, Venettozzi, Rodriguez, and Burnett argue plaintiff fails plausibly to

30

allege a procedural due process claim against them.

The Court agrees.

To establish a violation of due process, a plaintiff must allege:  (i) "he possessed a liberty interest"; and (ii) defendants "deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  A prisoner's liberty interest is "implicated" by prison discipline "if it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

During a disciplinary hearing, plaintiff alleges Hearing Officer Mayes was "unfair and partial" and did not afford him due process.  (Compl. at ECF 32 ¶ 101).  In particular, Mayes allegedly ignored contradictions in the record, dismissed plaintiff's questions regarding such contradictions, and failed to obtain plaintiff's explanation for failure to attend an earlier scheduled hearing.  Eventually, plaintiff alleges Venettozzi and Rodriguez affirmed Mayes's decision on appeal, with Rodriguez reviewing the appeal and Venettozzi rendering a decision within forty-eight hours.  Further, Superintendent Burnett was allegedly "the sole facility administrator to review and act upon [plaintiff's] disci[p]linary disposition" and he "inadequately reviewed the hearing" thereby "directly assist[ing] in the" deprivation of plaintiff's "liberty." (Id. at ECF 10 ¶ F3).

As to all defendants, plaintiff fails plausibly to allege a liberty interest.  Plaintiff does not allege the outcome of the disciplinary hearing, including the punishment he received, or how he suffered hardship.  Thus, "[a]lthough [p]laintiff alleges several flaws with his hearing," he "does not allege any facts alleging that the resulting discipline imposed atypical and significant hardship on the [p]laintiff in relation to the ordinary incidents of prison life."  Smolen v. Wesley,

2019 WL 4727311, at *13 (S.D.N.Y. Sept. 25, 2019) (dismissing procedural due process claim). Thus, plaintiff's claim fails for failure to "show that a liberty interest was implicated." Id.

In addition, as to Venettozzi, Rodriguez, and Burnett, "prison officials who merely review and affirm outcomes of prisoner disciplinary hearing are not personally involved in the disciplinary hearing itself." Hendrix v. Annucci, 2021 WL 4405977, at *15 (N.D.N.Y. Sept. 27, 2021).

Accordingly, plaintiff's procedural due process claim against Mayes, Venettozzi, Rodriguez, and Burnett must be dismissed.

V.      Section 1983 Conspiracy Claims

Defendants Losi, Walden, Pitt, Figueroa, Mayes, Venettozzi, Burnett, Rodriguez, Serringer, Albert, Prince, Nienstedt, Harkins, Tracy, Jimenez, and Lopez argue plaintiff fails to allege an actionable conspiracy against them under Section 1983.[13]

The Court agrees as to these defendants, and sua sponte dismisses plaintiff's other Section 1983 conspiracy claims against defendants Campbell, Osselman, Furco, Piggee, Carbone, Lavalle, and Downer.[14]

---

[13]      Defendants also argue plaintiff fails to state a Section 1983 conspiracy claim against a purported defendant "Jenkins" in their Point IV header.  (See Defs. Mem. at 23).  However, there is no Jenkins named as a defendant and plaintiff's complaint does not contain allegations related to anyone named Jenkins.

[14]      Although defendants did not move to dismiss plaintiff's Section 1983 conspiracy claims against these defendants, pursuant to the Prison Litigation Reform Act, for in forma pauperis proceedings, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

Here, the same reasons supporting dismissal of plaintiff's Section 1983 conspiracy claim against certain defendants—as briefed in defendants' memorandum of law—apply equally to the remaining defendants.  Accordingly, the Court sua sponte dismisses plaintiff's Section 1983 conspiracy claim against all defendants, as set forth in this subsection.

A.     Legal Standard

To state a Section 1983 conspiracy claim, a plaintiff must allege (i) "an agreement between two or more state actors," (ii) "to act in concert to inflict an unconstitutional injury," and (iii) "an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[A]lthough a plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008). "[C]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d at 72.

Further, "a violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). If a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law. See AK Tournament Play, Inc. v. Town of Wallkill, 2011 WL 197216, at *3–4 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 F. App'x 475 (2d Cir. 2011) (summary order).

And in light of "the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, federal courts require more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive the plaintiff of his constitutional rights." Nwanze v. Philip Morris Inc., 100 F. Supp. 2d 215, 219 (S.D.N.Y. 2000), aff'd sub nom., Nwanze v. Morris, 6 F. App'x 98 (2d Cir. 2001) (summary order). Indeed, a plaintiff must "do more than append, 'on belief,' the label of

'agreement' to otherwise independent charges of constitutional misconduct, in order to state a conspiracy claim." Powell v. United States, 2020 WL 5126392, at *9 (S.D.N.Y. Aug. 31, 2020).

      B.    Analysis

Plaintiff alleges Jimenez, Harkins and Tracy conspired to violate his First and Eighth Amendment rights by creating "an environment specifically designed to keep plaintiff in persistent fear and duress" (Compl. at ECF 5 ¶ A), and engaging "in a continuous cycle of hostile language and acts to keep the plaintiff from exhausting" his First Amendment rights. (Id. at ECF 14 ¶ 22).

Further, Piggee, Carbone, and Lavalle allegedly "conspired" to assault plaintiff. (Compl. at ECF 11 ¶ I1).

Plaintiff also alleges defendants Albert, Nienstedt, Pitt, Walden, Figueroa, Campbell, Furco, Osselman, and Lopez conspired in some way to cover up various constitutional violations purportedly committed against plaintiff. Specifically, Albert and Nienstedt allegedly "assisted in the mass conspiracy" to assault plaintiff and cover it up, including by Nienstedt forging unidentified state records. (Compl. at ECF 8 ¶¶ C2, C4). And Pitt, Walden, and Figueroa purportedly conspired to "cover up" plaintiff's "assault and sexual harassment by way of forging my responses to the medical inquiry." (Id. ¶ C6, ECF 22 ¶¶ 45–46). In addition, Campbell, Furco, and Osselman allegedly conspired "to forge" a "false response beneficial to the cuprits of the sexual assault." (Id. at ECF 10 ¶¶ E5–E7). Likewise, Lopez allegedly "assisted in covering up the violations and lied on record to ensure that the culprits conspiracy ended in satisfactory." (Id. at ECF 8 ¶ C3).

Mayes allegedly "conspired" with other defendants to violate plaintiff's Eighth and Fourteenth Amendment rights (Compl. at ECF 16 ¶ 31), and as hearing officer, Mayes

"conspired with multiple defendants to wrongfully confine [plaintiff] and cover up assault and sexual assault." (Id. at ECF 10 ¶ F).  Similarly, Prince allegedly conspired with other defendants to detain plaintiff in the SHU.  (Id. at ECF 8 ¶ C).

As to Venettozzi, Rodriguez, and Serringer, plaintiff alleges they conspired with one another to violate plaintiff's First and Eighth Amendment rights, as well as his Fourteenth Amendment due process rights.  (Compl. at ECF 7 ¶ B3.0, ECF 33 ¶ 103).  Further, Venettozzi allegedly assisted in covering up a "mass conspiracy" violating plaintiff's Eighth and Fourteenth Amendment rights on May 14, 2021 (id. at ECF 10 ¶ F4), and "established" a "wide spread conspiracy to quell the plaintiffs [rights] and complaints and confine him wrongfully." (Id. at ECF 33 ¶ 104).

In addition, plaintiff alleges Losi conspired with a non-defendant to violate plaintiff's "protected right" to file a complaint regarding a crime.  (Compl. at ECF 35 ¶ 111).

All of plaintiff's allegations regarding purported conspiratorial conduct are conclusory. Plaintiff repeatedly alleges each of these defendants conspired in one way or another, with someone else—including defendants and non-parties—and without further supporting allegations, which are insufficient.  See Corsini v. Condé Nast, 613 F. App'x 1, 3 (2d Cir. 2015) (summary order).  And plaintiff has not provided any factual basis "supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effect of the conspiracy." Adams v. City of New York, 2023 WL 2734611, at *6 (E.D.N.Y. Mar. 31, 2023).

Accordingly, all of plaintiff's Section 1983 conspiracy claims must be dismissed.

**CONCLUSION**

The motion to dismiss in part is GRANTED IN PART and DENIED IN PART.

The following claims <u>are</u> <u>dismissed</u>:

- First Amendment retaliation against Serringer;

- First Amendment denial of access to courts against Jimenez, Harkins, Tracy, Drexler, Walden, Kitson, and Serringer;

- Eighth Amendment sexual abuse against Bianchi, Drexler, and Lopez;

- Eighth Amendment deliberate indifference to medical needs against Pitt and Walden;

- Eighth Amendment failure to protect against Pitt, Walden, Figueroa, Campbell, Furco, and Osselman;

- Eighth Amendment deliberate indifference against Jimenez, Tracy, Harkins, Ortiz, Del Bianco, Serringer, Drexler, Nelson, and Bianchi;

- Fourteenth Amendment procedural due process against Mayes, Venettozzi, Rodriguez, and Burnett; and

- Section 1983 conspiracy against Losi, Jimenez, Harkins, Tracy, Mayes, Venettozzi, Rodriguez, Burnett, Campbell, Osselman, Furco, Piggee, Carbone, Lavalle, Downer, Walden, Pitt, Figueroa, Serringer, Albert, Prince, Nienstedt, and Lopez.

The following claims <u>may</u> <u>proceed</u>:

- First Amendment denial of access to courts against Ortiz, Del Bianco, and Losi;

- Eighth Amendment excessive force against Piggee, Harkins, Albert, Prince, Nienstedt, Lavalle, and Carbone;

- Eighth Amendment sexual abuse against Buckham and Downer;

- Eighth Amendment failure to intervene against Lopez and Ortiz;

- Eighth Amendment failure to protect against Downer, Losi, Wood, Buckham, Harkins, Santos, Lavalle, Carbone, and Walden; and

- Eighth Amendment deliberate indifference against Downer.

By September 14, 2023, the remaining defendants shall file an answer to the complaint.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate defendants Campbell, Osselman, Furco, Pitt, Figueroa, Serringer, Jimenez, Tracy, Kitson, Bianchi, Nelson, Mayes, Venettozzi, Rodriguez, and Burnett from the docket.

The Clerk is further instructed to terminate the motion.  (Doc. #62).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions to plaintiff at the address on the docket.

Dated: August 14, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge